J-S23028-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF: S.R.B. AND A.R.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H.K., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1560 WDA 2018 |

Appeal from the Order Entered September 27, 2018
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  No. 81 of 2018,
No. 82 of 2018

BEFORE:   BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                         FILED JUNE 03, 2019

H.K. (Mother), appeals from the orders granting the petitions of the Westmoreland County Children's Bureau (WCCB) to involuntarily terminate her parental rights to her daughter, S.R.B., born in March of 2009, and son, A.R.B., born in May of 2010 (collectively, Children).[1]  We affirm.

Relevant to the instant matter, WCCB obtained emergency custody of Children on January 8, 2017, following a domestic incident between Mother

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] By separate orders entered the same day, the trial court involuntarily terminated the parental rights of Children's father, S.R.B., (Father).  Father has not appealed these orders, nor did he participate in these appeals.

and Children's foster father, R.B.[2]  At that time, Father's whereabouts were unknown.

On January 11, 2017, after a shelter care hearing, Children were returned to Mother's custody subject to a safety plan.  On February 10, 2017, Children were again placed in emergency custody based on a report that Mother was intoxicated and assaulted R.B.  Children were placed with R.B., who no longer resided with Mother.

Children were adjudicated dependent on March 7, 2017.  The court ordered Children to remain in their kinship foster home with R.B.[3]

Permanency review hearings were held on August 9, 2017, and February 26, 2018, and the trial court maintained Children's commitment, placement, and permanency goal.[4]  The court further noted that Mother was minimally

_____

[2] Unless otherwise noted, we refer to the Master's March 7, 2017 Recommendation for Adjudication and Disposition—Child Dependent, Findings of Fact, which was marked and admitted at the termination hearing as Exhibit 1.

We note that Mother has a long history of contacts with WCCB due to her substance abuse issues.

[3] Children have a half-sibling, who is the child of Mother and R.B., who is not a subject of this appeal.

[4] On December 2, 2017, WCCB received a referral based on Mother's arrest for a domestic incident involving R.B. and S.R.B.  N.T., 9/20/18, at 10.  As reported to WCCB,

> the incident occurred early Friday morning around 12:30 a.m. Mother was intoxicated and was beating on the door wanting her money card.  She burst into the home, and broke some things in

compliant and made no progress.  See Exs. 1-2, Permanency Review Orders, 8/9/17, 2/26/18.  As revealed by the record, Mother was in and out of drug and alcohol treatment and prison throughout 2017 and 2018.  See N.T., 9/20/18, at 54-55, 59-60, 63-65, 83, 85; see also Exs. 1-3.

As stated by the trial court:

> During the period from March 2018 until the within termination hearing, [M]other continued to exhibit her years-long pattern of drug and alcohol addiction. . . .  Though offered an array of drug and alcohol and rehabilitation services, arrests and failures continued, and she had only infrequent contacts with [C]hild[ren].

Trial Ct. Op., 1/23/19, at 1-2.

WCCB filed petitions to involuntarily terminate Mother's and Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b) on May 29, 2018. The trial court held a hearing on WCCB's petitions on September 20, 2018.

_____

> the kitchen, and then mother called the police at some point during that time and had reported to the police that [R.B.] was beating her.  And then she had grabbed [S.R.B.]'s hair and was hitting her on the head per [R.B.]

N.T., 9/20/18, at 11.  Mother was ordered not to have contact with S.R.B. based on this incident.

WCCB determined that the allegations were unfounded and closed its investigation.  WCCB determined that the incident "did not meet criteria for abuse as defined by the Child Protective Services Law," because S.R.B. did not report any "substantial pain, injury, or impairment."  See 23 Pa.C.S. § 6303(b.1).  The criminal charges against Mother for simple assault, public drunkenness, and harassment were dismissed on August 30, 2018.

At the hearing, WCCB presented the testimony of Jessica Celesnik of WCCB's Assessment Unit; Alexis Jacomen, a therapist with King & Associates;[5] Lisa Johnston, Mother's probation officer; and Brandi Petho, a WCCB caseworker.  Mother and Father, who were present and represented by counsel, each testified on their own behalf.  Children were represented by a guardian ad litem, Leslie J. Uncapher Zellers, Esquire, during this proceeding.[6] N.T., 9/20/18, at 3-4.  The parties stipulated to the entry of the orders of adjudication, permanency review orders, and criminal dockets for both Mother and Father.[7]  Id. at 4-7.

The trial court summarized the relevant testimony as follows:

_____

[5] Ms. Jacomen was accepted by the court as an expert.  N.T., 9/20/18, at 16. While originally contracted to provide services to Mother and R.B., King & Associates were contracted to provide services to Children in December 2017. Id. at 16-17.  Ms. Jacomen continued to provide Children therapeutic services at the time of the hearing.  Id. at 15-16, 20.  Her reports were marked as Exhibits 6 and 7.  Id. at 41; see also Exs. 6 and 7.

[6] Attorney Uncapher Zellers testified to her recent conversation with Children, who were nine and eight years old at the time, and stated that there was no conflict between their best interests and legal interests.  N.T., 9/20/18, at 3-4.  As such, we find the requirements of 23 Pa.C.S. § 2313(a) were satisfied. See In re Adoption of L.B.M., 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); see also In re T.S., 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (reaffirming the ability of an attorney-guardian ad litem to serve a dual role and represent a child's non-conflicting best interests and legal interests).

[7] See Exs. 1-4.  Mother also had numerous cases related to simple assault, disorderly conduct, and public drunkenness over the course of 2017 and 2018.

At the termination hearing, [Ms.] Jacomen, a qualified therapist who provided services to Children, testified that Children had experienced severe emotional trauma because of [M]other's drinking, domestic violence in the house, and [M]other's lack of attention to them, etc. Ms. Jacomen stated Children have ongoing fears and anxieties when thinking about [M]other; she opined that she would not recommend any unsupervised contact with [M]other.

She also testified Children call [R.B.] "dad". [S.R.B.] barely knows [F]ather, as his contact over several years has been minimal. [A.R.B.] remembered being scared when [F]ather stole a football from a store and gave it to him. Children's biggest fear now is that they will be removed from [R.B.], the man they call "dad". Neither child will experience any issues if severed from the parents.

* * *

[M]other's probation officer, [Ms.] Johnston, testified that [M]other has had multiple addresses, has been an inpatient and resident in treatment, and receive[d] rigorous [drug and alcohol] services, and will be on probation until April 2020. On the day of this termination hearing, [M]other was positive for methamphetamines . . . and cocaine.

* * *

[M]other has a perspective [diametrically] opposed to the WCCB witnesses and the dependency findings over the past year. She contends her relationship with Children is "really good", and that they talk every day. She says that Children do not at all fear her, and that the supervised visits at [JusticeWorks] go well, they make flowers, play ball, etc. She admits communication was less during her periods in jail or residential placement ([Conewago], jail, half-way house, Pyramid, Cove Forge).

She desperately does not want to lose her children to [R.B.], and is "stressed and scared"; she attributes these emotions as causing her recent relapse (a week prior to the hearing). Despite her relapse and recent (and continuing) turmoil, [M]other intends to go to SPHS (outpatient treatment), meetings, etc., and to stay on her "meds".

* * *

> As to Children having no fear of [M]other, [Ms. Jacomen] testifies [in rebuttal that] she had extensive discussions with [S.R.B.], and that [S.R.B.] "specifically" said she is uncomfortable saying things to [M]other, but do [sic] not want to upset her. The gist of this rebuttal testimony is that Children love their parents, but do not share things with them because they do not want to upset them.

Trial Ct. Op., 1/23/19, at 2-3.

By orders entered September 27, 2018, the trial court involuntarily terminated the parental rights of Mother to Children pursuant to 23 Pa.C.S. § 2511(a)(8) and (b). On October 19, 2018, Mother, through appointed counsel, filed a timely notice of appeal,[8] as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[9]

Mother raises five questions, which we have reordered as follows:

> 1. Did the trial court err in terminating Mother's parental rights despite evidence that Mother had participated and made significant progress in services provided?

_____

[8] Mother's counsel improperly filed a single notice of appeal listing the separate docket numbers assigned to the termination petitions regarding each child. See Pa.R.A.P. 341, Note ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."); Commonwealth v. Walker, 185 A.3d 969, 977 (Pa. 2018) (holding that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal"). However, we decline to quash this appeal, because Mother filed her appeals before this Court's decision in In the Matter of M.P., 204 A.3d 976, (Pa. Super. 2019).

[9] The trial court found that the grounds for termination were established under Section 2511(a)(1), (8), and (b). In its Rule 1925(a) opinion, the trial court referred to Subsections (a)(2) and (b). However, because WCCB filed the petitions under Subsections (a)(8) and (b), we will address those subsections. See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc) (reiterating that in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b)).

2.  Did the trial court err in terminating Mother's parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8) when the [c]ourt failed to include any analysis as to a basis for termination pursuant to § 2511(a)(8)?

3.  Did the trial court err in terminating Mother's parental rights by failing to give primary consideration to the developmental, physical and emotional needs and welfare of Children?

4.  Was clear and convincing evidence presented to show that termination was warranted pursuant to 23 Pa.C.S.[ §] 2511(a)(8) and 2511(b)?

Mother's Brief at 4.

We summarize Mother's arguments together.  Mother asserts that the trial court erred in finding termination of her parental rights justified under Section 2511(a)(8).  Mother argues that she was compliant with services.  Id. at 7-8.  Mother states that "[i]t is clear that [she] has been successful in several areas and has made herself available for the services recommended and provided by the Agency.  However, despite significant evidence and testimony demonstrating Mother's compliance and progress with services, the [c]ourt terminated Mother's parental rights."  Id. at 8.  Mother points to her successful discharge from drug and alcohol treatment and regular visitation with Children.  Id. at 7-8.

As to Children's needs and welfare, Mother maintains:

There was no evidence offered that would support a determination and/or conclusion that terminating Mother's rights would in any way serve [C]hild[ren]'s welfare or needs. . . .

. . . [T]he testimony in this case has revealed that Mother and Children have an ongoing relationship and have a clear and distinct bond and have not proven, by clear and convincing

evidence, that termination of Mother's rights is in the best interest of Children. [In re Z.P.,] 994 A.2d 1108, 1121 (Pa. Super. 2010).

Ms. Petho simply testified that she believes that that the termination of Mother's parental rights supports the developmental, physical and emotional needs and welfare of Children. However, Ms. Petho failed to provide any competent or supporting evidence to support her conclusions and/or opinions. There was absolutely no evidence provided as to Children's specific needs, Children's emotional and mental status or well-being, Children's physical needs, etc. Therefore, as no competent evidence was provided in order to establish the grounds set forth in 23 Pa.C.S.[] § 2511(a)(8) or § 2511(b), the [c]ourt erred in terminating Mother's parental rights.

Id. at 9-10.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." Id. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." Id. The trial court's decision, however, should not be reversed merely because the record would support a different result. Id. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. See In re R.J.T., [9 A.3d 1179, 1190 (Pa. 2010)].

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

- 8 -

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." In re C.S., 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quoting Matter of Adoption of Charles E.D.M., II, 708 A.2d 88, 91 (Pa. 1998)).

Sections 2511(a)(8) provides:

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

In re Adoption of M.E.P., 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

Specifically, once the twelve-month period has been established, the trial court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the agency supplied over a realistic period. In re A.R., 837 A.2d 560, 564 (Pa. Super. 2003). The "relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." In re I.J., 972 A.2d 5, 11 (Pa. Super. 2009). "Notably, termination under Section 2511(a)(8)[] does not require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." In re Adoption of R.J.S., 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted) (emphasis in original).

Section 2511(a)(8) also requires a court to assess the needs and welfare of the relevant child or children. The needs and welfare analysis "under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent" and must be addressed separately before considering the best interests of a child. See In re C.L.G., 956 A.2d 999, 1008-09 (Pa. Super. 2008) (en banc).

Following our review, we find WCCB established the three elements of Section 2511(a)(8) by clear and convincing evidence. First, the record substantiates that Children have been removed from parental care for a period exceeding twelve months and that the reasons for removal persisted. Children had been in care for over twelve months, having been removed from parental care on February 10, 2017. N.T., 9/20/18, at 62, 78.

Second, the record establishes that Children were removed from Mother's custody based on Mother's drug and alcohol issues and concerns about domestic violence. Id. at 62. According to Ms. Petho, Mother was ordered to complete a drug and alcohol evaluation, comply with random drug screens, complete a mental health evaluation, and participate in parenting services. Id. at 63. Ms. Petho testified that Mother's compliance was "minimal" and her progress was "none." Id. at 76. Ms. Petho testified that Mother did not appear for forty-seven of the sixty drug tests. Id. at 66-67.

As Mother notes, she most recently completed an inpatient drug and alcohol program at Conewago in April 2018. However, she entered this program after she was arrested and ordered to attend drug and alcohol treatment. Id. at 54, 58-59, 64-65. After completing that program, Mother left her halfway house against the facility's advice in June 2018, which resulted in the issuance of a bench warrant for Mother. Id. at 54, 58-59, 64-65. Ms. Johnston, Mother's probation officer, further testified that on September 13,

2018, Mother admitted to using cocaine.[10]  Id. at 55.  On September 20, 2018, the day of the termination hearing, Mother also tested positive for methamphetamines and opiates, among other substances.[11]  Id. at 8, 60, 67; see also Ex. 5.

Therefore, despite Mother's efforts, she continued to struggle with substance abuse issues.[12]  Accordingly, the record supports the trial court's findings that the conditions that led to Children's placement continued to exist.

Third, the record reveals that Mother attended fifty-five of seventy-one visits, mostly from March to December 2017.  Id. at 67-68.  Ms. Petho acknowledged that the visits went well and that she did not have concerns as to Mother's ability to parent.

However, during this time, visits were moved to JusticeWorks due to conflict between Mother and R.B.  Id. at 68.  Mother's visits were then moved to a supervised therapeutic setting[13] upon recommendation of Ms. Jacomen,

---

[10] Mother admitted to a relapse due to the stress of potentially losing custody of Children and indicated that she may re-engage in treatment.  N.T., 9/20/18, at 113-14.  Ms. Johnston stated that Mother remains on probation for a simple assault case until April 7, 2020, and a retail theft case until April 2, 2019.  The results of her drug test could give rise to a probation violation.  Id. at 56.

[11] Mother also tested positive for amphetamines and benzodiazepines.  However, Mother had verified prescriptions for those substances.

[12] We note that Mother was also ordered to obtain stable and appropriate housing.  Ex.1 at ¶ 3.  There was no indication that Mother achieved this goal.

[13] When asked to define supervised therapeutic visitation, Ms. Jacomen explained that such a visits "has a master's level therapist in the visitation

Children's therapist. Ms. Jacomen made the recommendation based, in part, on a report that Mother asked Children to leave the windows at R.B.'s home open so she could enter. Id. at 68, 82.

Following an incident in December 2017, a no-contact order was put in place based on Mother's arrest.[14] Id.; see also supra note 4. Ms. Petho testified that Children did not express a desire to visit Mother while the no-contact order was in place. N.T., 9/20/18, at 85. After the no-contact order lifted on August 30, 2018, Mother had three supervised therapeutic visits with Children.[15] Id. at 84-85.

Ms. Jacomen indicated that Mother's interactions with Children during the supervised therapeutic visits were limited, and that Children had no difficulty separating from Mother at the end of the visits. Id. at 32-33. Ms. Jacomen testified that Children were fearful of Mother and did not want Mother in the home. Id. at 22. Moreover, Ms. Jacomen expressed concern as to Children's safety, in light of Mother's continued positive drug tests. Id. at 51.

_____

room, and they are there to observe and account for any signs of stress, or trauma, or any kind of responses that are negative from Children." Id. at 30.

[14] Although the no-contact order was only entered as to S.R.B., A.R.B. did not see Mother during the time the order was in effect. N.T., 9/20/18, at 83. Both Ms. Jacomen and Ms. Petho stated that A.R.B. did not want to see Mother and, noting that Mother was incarcerated for at least a portion of this time, did not want to go to the prison. Id. at 45, 83.

[15] The final three supervised therapeutic visits occurred after WCCB filed the petitions to terminate Mother's parental rights. Mother was offered an additional visit the day prior to the hearing, which she cancelled. Id. at 31, 84-85.

She suggested that Mother "absolutely not" have unsupervised visitation and indicated she was unsure "if that would be anything [she] would ever recommend." Id. at 34.

Although Mother maintained relatively regular visitation with Children, the record establishes that Mother was not able to demonstrate an ability to have unsupervised contact with Children. Mother's continued substance abuse issues raised safety concerns. Despite Mother's testimony that she had a positive relationship with Children, there was testimony that Children were in fear of her. Accordingly, the record supports the trial court's determination that termination would best serve the needs and welfare of Children in light of Mother's behaviors. See C.L.G., 956 A.2d at 1008-09.

In sum, we find no basis to disturb the trial court's ruling that termination of Mother's parental rights was appropriate under Section 2511(a)(8). See T.S.M., 71 A.3d at 267. Therefore, we next review the court's conclusion that termination of Mother's parental rights was in the best interests of Children under Section 2511(b). See L.M., 923 A.2d at 511.

Sections 2511(b) provides:

(b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Our Supreme Court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In In re E.M., [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

T.S.M., 71 A.3d at 267 (some citations omitted). "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." In re K.Z.S., 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." Z.P., 994 A.2d at 1121 (internal citations omitted).

Our Supreme Court has stated that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often

- 15 -

harbor some positive emotion towards the abusive parent." See T.S.M., 71 A.3d at 267 (quoting In re K.K.R.-S., 958 A.2d 529, 535 (Pa. Super. 2008)). The Court further stated, "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming Children cannot be misconstrued as bonding." Id. (quoting In re Termination of C.W.S.M., 839 A.2d 410, 418 (Pa. Super. 2003) (Tamilia, J., dissenting)).

> Moreover,
>
> [w]hile a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Instantly, Ms. Petho testified that termination of Mother's parental rights favors Children's developmental, physical and emotional needs and welfare. N.T., 9/20/18, at 78. Both Ms. Petho and Ms. Jacomen opined that termination of parental rights would not result in the severing of a relationship that is necessary and beneficial to Children. Id. at 40, 80.

The record further reveals that Children have resided together in their pre-adoptive foster home for nineteen months. Id. at 79. They are doing well, and their needs are being met. Id. at 79-80. Ms. Petho testified, "Children are doing great. They report feeling safe with R.B. . . . They enjoy living together. They enjoy being with their younger sibling. . . . And they have stated multiple times that they wish to remain in the home with R.B." Id. She further indicated that Children feel safe in the home and express a desire for R.B., whom they refer to as "dad," to adopt them. Id. at 79-80, 86.

Ms. Jacomen similarly testified that Children view R.B. as "dad" and wish to remain in the home with him. Id. at 35-38. She stated that "both children have indicated that they do not wish -- they want to stay in the home, they do not wish to reunify with their [biological] parents." Id. at 36. As noted above, Ms. Jacomen expressed concerns that Children were afraid of Mother and that Mother continued to exhibit substance abuse issues. Id. at 22, 51.

Based on the forgoing, we find no merit to Mother's argument that the trial court's ruling on Section 2511(b) was in error. The record confirms the trial court's conclusion that termination of Mother's parental rights serves Children's developmental, physical and emotional needs and welfare. While Mother may profess to love Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. See Z.P., 994 A.2d at 1121. Furthermore, Children had been in custody and removed from Mother's care for nineteen months. N.T., 9/20/18, at 62, 78.

As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." R.J.S., 901 A.2d at 513.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S. § 2511(a)(8) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2019